ARCHER *v.* SOUTHERN RY. Co. IN. MISSISSIPP.

[75 South. 251, Division B.]

1. NAVIGABLE WATERS. *Deeds. Riparian rights.*

A deed to lands bordering on a navigable river, consisting of the grantor's entire property in that locality "except that previously conveyed," does not include riparian rights abutting adjoining lands which the same grantor had previously conveyed to another, although such previous deed may not have conveyed riparian rights.

2. NAVIGABLE WATERS. *Accretions to island. Ownership.*

Where an island in a navigable stream increases by accretions, a riparian owner cannot claim any part thereof extending beyond his boundaries, since however such accretions may be commenced or continued, the right of one owner of upland to follow and appropriate them ceases when the formation passes latterly the line of his coterminous neighbor.

APPEAL from the chancery court of Washington county.

HON. E. N. THOMAS, Chancellor.

Bill by Mrs. Kate C. Archer against the Southern Railway Company, in Mississippi. From a decree dismissing the bill, complainant appeals.

The facts are fully stated in the opinion of the court.

*Percy Bell*, for appellant.

Appellant bases her claim upon the following propositions of law: First: Under the deed from Deaton & Skinner to the Georgia Pacific Railway, defendant's predecessor in title, which deed is Exhibt A to the original bill, no riparian rights were granted.

Second: That if riparian rights were granted by said instrument, they would not affect her title to that portion of the island in dispute because the same is an accretion to the remainder of the island, her title to which is undisputed.

Third: That if the disputed land be hers she is entitled to compensation for sand and gravel dredged therefrom and to a discovery of the amount, and the selling price thereof. 4 Am. & Eng. Ency. Law (2 Ed.), pages 830-831; 13 Cyc., page 629; *Packer* v. *Bird*, (34 Law Edition) U. S. Court Reports, page 819; 5 Cyc., pages 902-903; *Freeman* v. *Bellegarde,* 41 Pac. 289; *Axline* v. *Shaw*, 17 So. 411; *Bradford* v. *Cressy,* 45 Me. 9; *Trustees* v. *Kirk,* 68 N. Y. 459; *City of Boston* v. *Richardson,* 13 Allen, 146, Text 154; *Clement* v. *Burns,* 43 N. H. 609, Text 616; *Nickerson* v. *Crawford,* 16 Me. 245; *Chapman* v. *Edmands,* 3 Allen, 512, Text 514; *Niles* v. *Patch,* 13 Grey 254; *Murphy v. Copeland,* 57 Iowa, 515; *Morgan* v. *Reading,* 3 S. & M. 366; *Mayham* v. *Marshall,* 30 Miss. 109; *Bradford* v. *Cressy,* 45 Me. 9; *Crane* v. *Lynch,* 27 Pa. Supreme Court Reports, 565; *Hatch* v. *Dwight,* 9 Am. Dec. 145; *Freeman* v. *Leighton,* 23 Atl. 542; *Murphy* v. *Copeland,* 2 N. W. 691; *Dunlap*

v. *Storer*, Fed. Case 4164; *Thomas* v. *Hatch*, Fed. Case 13899; *Rockwell* v. *Baldwin*, 53 Ill. 19; *Whitmore* v. *Brown*, 61 Atl. 985; *Hatch* v. *Dwight*, 9 Am. Dec. 145; *Jones* v. *Soulard*, 26 Law Ed. (U. S. Supreme Court Reports) 604.

Accretions to the island belong to original owner. While the first question of law in this case has been frequently decided favorably to appellant, there is no exactly parallel case, on the second proposition of law. We find, however, numerous cases holding that accretions to islands are the property of the owner of the island, regardless of where they go. This principal seems so well established that we account for the absence of a parallel case to this one by the circumstances that no one had the temerity to claim accretions to an island to the general body of which they had no title.

The principle underlying title to all accretions is that these additions to land made slowly and by an imperceptible process belongs to the owner of the land. *Wells* v. *Bailey*, 3 A. S. R. P. 48; *Morgan* v. *Reading*, 3 S. & M. 366; *Bellefontaine Improvement Company* v. *Niedringhaus*, 72 A. S. R. 269; *People* v. *Warner*, 116 Mich. 228; *Benson* v. *Morrow*, 61 Mo. 345; *Bigelow* v. *Hoover*, 85 Iowa, 161; 39 Am. St. Rep. 296; *Ben* v. *Morrow*, 61 Mo. 345; *Linthieum* v. *Coan*, 64 Md. 439, 54 Am. Rep. 775; *People* v. *Warner*, 116 Mich. 228; *Tatum* v. *St. Louis*, 125 Mo. 647; *Naylor* v. *Cox*. 114 Mo. 232; *Cooley* v. *Golden*, 116 Mo. 33; *Filmore* v. *Jennings*, 78 Cal. 634; *Bigelow* v. *Hoover*, 85 Iowa, 161; 39 Am. St. Rep. 296; *Wiggenhorn* v. *Kountz*, 23 Neb. 690; 8 Am. St. Rep. 150; *Naylor* v. *Cox*, 114 Mo. 647; *Hahn* v. *Dawson*, 134 Mo. 589; *Crandall* v. *Smith*, 134 Mo. 633; *People* v. *Warner*, 116 Mich. 228; *Frank* v. *Goddin*, 112 Am. St. Rep. 493, 91 S. W. 1059; *Naylor* v. *Cox*, 21 S. W. 589; *St. Louis* v. *Rutz*, 34 Law Ed. 941. (U. S.); *McBaine* v. *Johnson*, 55 S. W. 1031; *Morris* v. *Farmer*, 56 S. W. 493; *Morris* v. *Brook*, 25 Abb. Law Journal, 90; *Hilleary* v. *Wilson*, 100 S. W. 1194; *City*

*of Victoria* v. *Schott,* 29 S. W. 681; *Fulmer* v. *Jennings,* 21 Pac. 530; *Brown* v. *Warner,* 74 N. W. 705; *Posey* v. *James,* 75 Tenn. 98.

*T. C. Catchings,* for appellee.

Counsel contends, as I understand, that where an island is formed in an unnavigable river on that part of the bed of the river owned by a riparian proprietor, and extends by accretion so as to cover a part of the bed of the river opposite the land of a contiguous riparian proprietor, the sole right that such contiguous proprietor has in that part of the island formed on the bed of the stream in front of his land is the right to go over it in order to obtain access to the river. There is no warrant, I respectfully submit, for this view of the law. The correct view was announced by Chief Justice SHAW of the supreme court of Massachusetts in the case of *Inhabitants of Deerfield* v. *Pliny Arms,* 17 Pick. 41, in which after discussing the proper rule of the division among riparian proprietors he said: "In both cases, we think two objects are to be kept in view, in making such an equitable distribution; one is, that the parties shall have an equal share in proportion to their lands, of the area of the newly formed land, regarding it as land useful for the purpose of cultivation or otherwise, in which the value will be in proportion to the quantity; the other is, to secure to each an access to the water, and an equal share of the river line in proportion to his share on the original line of the water, regarding such water line in many situations as principally useful for forming landing places, docks, quays, and other accommodations with a view to the benefits of navigation, and as such constituting an important ingredient in the value of the land." *Ingraham* v. *Wilkinson,* 4 Pick. 268; *Hardin* v. *Jordan,* 140 U. S. 371.

In this state a riparian proprietor takes the bed of the stream in front of his land to the thread of the stream.

In many states, as for example, in Missouri, Iowa, Arkansas and California, the rule is that the state owns the bed of the stream to the middle of the channel, and that the riparian proprietor takes only to the water's edge. The state of Illinois holds, as Mississippi does, that the title of a riparian proprietor extends to the thread of the stream.

Just exactly as the right by accretion to an island forming in the state of Missouri on the west side of the river cannot operate so far as to deprive riparian proprietors in the state of. Illinois of the title vested in them by the law of Illinois to the bed of the river as far as the thread of the stream. This identical proposition is announced by the supreme court of Missouri in the case of *Crandall* v. *Allen,* 24 S. W. 173.

If accretion to the main land of one riparian proprietor cannot be extended so as to give title to the bed of the stream in front of an adjoining proprietor, it would be most remarkable if an accretion to a bar formed in the bed of the river in front of one riparian proprietor could be so extended as to deprive the adjoining proprietor of his title to the bed of the stream in front of his property. The right of a riparian proprietor to an island or bar formed in the river in front of his property is an incident to his ownership of the main land. The doctrine contended for by counsel would give infinitely more effect to the incident than to the main thing, of which it is an incident. In other words, the contention of counsel would give a more extensive right to the owner of an insland whose ownership simply began as an incident to his ownership of the main land than the owner of the main land would have if the accretion was to the main land. 29 Cyc. 354; *City of Victoria* v. *Schoot* (Tex.), 29 S. W. 682.

In *City of St. Louis* v. *Rutz,* 138 U. S. 226, the supreme court quoted with appoval the following statement of Chief Justice RUGER in *Mulry* v. *North,* 100 N Y. 426, towit: "However such accretions may be com-

menced or continued; the right of one owner of uplands to follow and appropriate them ceases when the formation passes laterally the line of his coterminous neighbor. A lateral proprietor, like a riparian proprietor, has a right to the water frontage belonging by nature to his land, although the only practical advantage of it may consist in the access thereby afforded him to the water for the purpose of using the right of navigation. This right is his, only, and exists by virtue and respect of riparian proprietorship.''

The same doctrine that the right of one owner of uplands to follow and appropriate accretions ceases when the formation passes laterally the line of his coterminous neighbor was announced by this court in the case of *Smith* v. *Leavenworth,* 101 Miss. 238. In that case it is said:

''The fact that the alluvion began forming north of section 24 and opposite the land of appellant is immaterial. When it reached appellee's shore line in its southward progress, he became entitled to his portion thereof. The general rule for apportioning alluvion between coterminous landowners is to give each such proportion of the new shore line as they possessed of the former shore line before the formation of the alluvion.'' See to the same effect, Gould on Waters, sec. 166; Farnham on Waters, secs. 2489 and 2500.

*Walton Shields,* for appellee.

There are three propositions of law contained in appellant's brief: First: Under the deed from Deaton and Skinner to the Georgia Pacific Railway, defendant's predecessor in title, which deed is made Exhibit A, to the original bill, no riparian rights were granted. Second: That if riparian rights were granted by said instrument, they would not effect her title to that portion of the island in dispute because the same is an accretion to the remainder of the island, her title to which is undisputed.

Third: That if the disputed land be hers she is entitled to compensation for sand and gravel dredged therefrom and to discovery of the amount, and the selling price thereof.

The first proposition we submit is immaterial to the solution of the case before the court because even though there were no riparian rights granted to the Georgia Pacific Railway in the deed referred to, the appellant is not placed in any better situation than if the riparian rights had been granted in said deed. If the deed from Skinner and Deaton to the Georgia Pacific Railway did not convey the riparian rights in the property therein conveyed to the Georgia Pacific Railway, then the riparian rights were retained by Skinner and Deaton, the grantors in said deed, and therefore they and not the appellant are the ones to complain of the use of those rights by the appellees herein or anyone else. In other words, the bed of the Mississippi river to the center of said river which is immediately in front of the land which was conveyed to the Georgia Pacific Railway by Deaton and Skinner in the deed above referred to, is the property of Deaton and Skinner, the grantors in said deed.

The only real question in the case is the one raised by the second proposition, and on that question we submit the following: Where accretions form along the bank or shore in front of the premises of several adjoining proprietors, the new land is to be divided among them in proportion to their relative frontage on the original bank or shore, or, according to another rule, by extending their side lines forward at right angles with the middle thread of the stream. 40 Cyc. 623, and notes.

Where, from accretion or reliction, an island is formed in private waters, (and the Mississippi River so far as this question is concerned is a private water), the shores and bed of which are owned by different proprietors, their boundary lines may be run as they existed immediately before the formation of the island. 1 A. & E. Ency. of Law 2 Ed. page 478 and notes.

Particular attention is called to the case of *Crandall* v. *Allen,* 118 Mo. 403, in which it is held that where alluvion begins to form upon the land of one of two contiguous riparian proprietors, and gradually extends in front of the land of the other, the proprietor of the land on which the alluvion first commences is entitled only to that alluvion which lies in front of his own land. See, also, *Hopkins Academy* v. *Dickinson,* Cush. (Mass.) 548, to the same effect. Also Washburn on Real Property, pages 55 to 58.

The above is the general rule of law laid down by all the authorities and none of the authorities cited by the appellant shows a contrary doctrine. The case is very simple. The land bordering on the stream and stretching away from it, or in other words the land out of the water, is not a separate and distinct piece of property from the land which constitutes the bed of the stream, or in other words, the land under the water, but is the same land, the same property, notwithstanding the fact that part of it is covered by water, and therefore, when the island in question by its gradual formation extended across the border of appellant's property over to the land adjoining, it did not thereby create any new land but simply piled up, so to speak, upon the land (the river's bed) of the adjoining owner, and it is immaterial so far as appellant's claim is concerned, whether that adjoining owner be appellees or Deaton and Skinner so long as it does not belong to her. The contention of appellant, if carried to its logical conclusion, amounts to this: if an island begun its formation in the Mississippi River in front of Desoto county, and gradually extended down the river to Wilkinson county, the proprietor in front of whose land, or on whose land it first formed, would own the entire island. This we submit is not the law.

The third proposition we do not care to argue, since if it is held that appellant is the owner of the entire island, it must follow as a matter of course.

COOK, P. J., delivered the opinion of the court.

Mrs. Archer, the appellant was the complainant in a bill filed in the chancery court of Washington county seeking to have her title confirmed to a certain island and the accretions thereto, which it is alleged formed in the Mississippi river opposite lands owned by complainant. To the bill of complaint appellee interposed a demurrer, which was sustained by the court, and from this decree complainant prosecuted this appeal.

The bill alleged that Mrs. Archer was the owner of certain lands, described in the bill, bordering on the Mississippi river; that an island had formed in the river opposite and west of her land and east of the thread of the stream; that by accretions the island had gradually extended up the river, until its northernmost point is now in front of the lands of the Southern Railway Company, which lands lie north of and adjoining complainant's lands. Complainant contends that, when the island in question formed offshore in front of her lands, it became her property, and that all of the accretions which thereafter formed upon the island are a part of the island, and therefore her property, and that this is true although the accretions to the island have formed between the lands of the coterminous owner and the thread of the stream.

Complainant also contends that she and defendant derived their title from a common source; that the deed made by the common grantor to the defendant described the land conveyed by metes and bounds, and fixed the western boundary as the bank of the river. In other words, complainant contends that the deed to the railway company conveys only to the banks of the river, and not to the stream—along the bank and not along the stream. These descriptive words, it is insisted, manifest an intention to reserve all riparian rights to the grantor.

With this postulate, it is argued that the common gran-
tor afterwards having conveyed all of the lands owned
by him in this locality to complainant by proper des-
criptive words, and by the general words, ''except that
previously conveyed,'' this conveyance carried the ripa-
rion rights of the grantor lying in front of the lands con-
veyed to the railway company.

It is somewhat difficult to state complainant's theory
with reference to the ownership of the riparian rights,
but we understand it to be that the deed to the railway
company excepted the lands lying west of the bank of the
river—thereby reserving to the grantor the land under
the water west of the bank to the thread of the stream,
and furthermore that the deed to complainant conveyed
all of the common grantor's rights not previously con-
veyed, which meant the riparian rights previously re-
served.

Following the description of the lands conveyed to
complainant, it appears that the land expressly des-
cribed does not touch the banks or stream of the river;
and, this being true, complainant must rely upon the
general words ''except that previously conveyed.''

It is argued that the grantor did not convey to defend-
ant the land under the water, but by the general words
did convey the same to complainant.

We find ourselves unable to endorse the reasoning of
complainant. In the first place, it is not at all clear that
the conveyance to defendant did not carry with it all
riparian rights. But, if we are mistaken in this, we can-
not believe that the common grantor intended to convey
riparian rights which did not under any circumstance ap-
pertain to the land particularly described. As complain-
ant must stand upon the strength of her own title, and
has failed to establish same to our satisfaction, it fol-
lows that the riparian rights are in some one other than
complainant.

We come now to the very interesting question, which in our opinion will finally dispose of this appeal. In the numerous cases decided by this court and other courts we have been unable to find but little authority exactly in point.

The island which formed in front of complainant's land, it is agreed, belonged to the owner of the land lying east of the river. The defendant does not challenge complainant's title of the island immediately in front of complainant; but, when complainant seeks to establish ownership beyond the northen limit of her shore line, defendants demur. It is pointed out that if complainant is right, when the nucleus of the island formed in front of her land, she would own the island if it should thereafter extend up and down the river along the entire river front of Washington county, and even more.

The general rule is stated to be, when an island is so formed in the bed of the river as to divide the channel and to lie partly on each side of the thread of the stream, if the land on opposite sides of the river belongs to different owners, the island is divided between them to the extent of their lands in length according to the original thread or medium line between the banks of the river. Gould on Waters, section 166.

It seems to be pretty well settled that, where an island forms opposite lands on one side of the stream and extends across the stream, the proprietor on the opposite side of the stream takes that part which forms on his side of the stream.

*Mulry* v. *Norton et al.*, 100 N. W. 437, 3 N. E. 586, 53 Am. Rep. 206, stated the rule thus:

"However such accretions may be commenced or continued, the right of one owner of uplands to follow and appropriate them ceases when the formation passes laterally the line of his coterminous neighbor."

This expression by the New York court strikes us as sound in principle and draws the line rationally and in accordance with common justice. If the owner can claim

the island in question after it has passed the line of his neighbor on the north, many complications as to reparian rights would inevitably arise; and if this is the iron-clad rule his ownership may extend over county lines no matter what may be the vagaries of the river.

As we have said before, there is a singular absence of authority on the precise question involved in this case. Much learning has been displayed by our own court, in the early cases, upon the subject of accretions and riparian rights; but we have searched in vain for a case just like the present case. The industry and ability of counsel has not produced a case in point, and so far as we know we are blazing the way in this decision. There must be some limit of the ownership of islands formed offshore in nonnavigable rivers, and, when we fix the limit at the line of the coterminous owner, we feel that we are not out of line with the authorities, and safe within the boundaries of the general principles of convenience, justice, and common rights of property.

Believing that the learned chancellors reached the proper conclusion, the bill will be dismissed.

*Affirmed.*