TINGLE et al. v. ANDERSON–TULLY CO.

Civ. No. 5.

District Court, S. D. Mississippi, W. D., at Vicksburg.

May 13, 1947.

Vollor, Teller & Biedenhorn and Culkin, Laughlin & Thames, all of Vicksburg, Miss., for plaintiffs.

Lamar Williamson, of Monticello, Ark., and Dent & Ward, of Vicksburg, Miss., for defendant.

MIZE, District Judge.

Plaintiffs are the owners of Section 1, excepting Lot 1 thereof, also Sections 2 and 3 of Township 16, Range 2, District West of Pearl River, in Warren County, Mississippi. Defendant is the owner of Sections 1, 2 and 3 of Township 16, Range 2, Choctaw District, in Warren County, Mississippi.

Many maps and drawings were introduced in evidence, and expert testimony of very high character was produced by both sides; and there is little dispute as to the actual facts in the case.

It is shown that Sections 1 and 2 of defendant's land on the south and east were separated from the northern part of the plaintiffs' land in Section 1 by the Yazoo River, or "Old River", at its mouth. In other respects, the properties of both plaintiffs and defendant were on and riparian to the Mississippi River, which was the dividing line between the States of Mississippi and Louisiana. The point at which the mouth of the Yazoo River and the thread of the stream of the Mississippi river came together will determine the legal question as to the title to the accretions that are involved in this controversy.

It is shown by the maps and testimony of the experts that the accretions that are in controversy undoubtedly began to build on to the lands of Anderson-Tully Company in Section 2 lying between the Mississippi River on the west and the Yazoo River on the east, and these accretions continued to build gradually down stream until the present area in controversy had been formed.

The controversy will be determined by locating the mouth of the Yazoo River at the date of the original Government Land Survey in 1822, and after that shall have been determined, then the law of the case is easy enough.

■ The law of Mississippi will determine the rights of the parties. It is well settled, even prior to the Erie Railway Co. case, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, that the law of the state where the land is situated, controls. This was held in the case of Hardin v. Jordan, 140 U.S. 371, 372, 11 S.Ct. 808, 35 L.Ed. 428, 430, as well as many other authorities that will be cited on this point. However, the Erie Railway Company case conclusively determines that the law of Mississippi must control.

■ The law in Mississippi is well settled as to the rights of landowners having lands bounded by the Mississippi River. This law is contrary to the holdings of many other states but is definitely decided in this State that the landowner bordering on the Mississippi goes to the thread of the stream, or the thalweg. The first case in Mississippi to announce that principle is Morgan v. Reading, 3 Smedes & M., 366. In that case the Court, among other things, said: "The Common Law, by construction, extends grants, bounded 'by', or 'on', or 'along' a fresh water stream, to the thread of the stream. * * * Having shown then that the Common Law was adopted for the government of the Mississippi Territory, and that the line of the territory was the middle of the river, it follows, that the rights of riparian owners on the east shore, must be determined by the common law."

To the same effect is the case of The Magnolia v. Marshall, 39 Miss. 109.

In this last case it is stated:

"At the time the title to the lands in question on the banks of the Mississippi river were granted by the government of the United States, the common law prevailed in the State of Mississippi. * * *

"We have already seen that there is not a case to be found, either English or American, which doubts or disputes that by the common law of England the right of the riparian owner, on the banks of freshwater streams, extends to the middle of

the stream, subject always to the public right of free navigation."

See, also, Wineman et al. v. Withers, 143 Miss. 537, 108 So. 708, 709. In this case the court said: "The center or thread of the stream in either event continues to be his water boundary, and he continues to own all of the land, either above or under the water, that lies between that boundary and the opposite upland boundary established by the calls of his deed."

■ It is true that the boundary would vary as the Mississippi river shifted or changed, but the Mississippi River, that is, the thread of the stream, is the dividing line between Louisiana and Mississippi, and, of course, remains the boundary line except where there is a change by an evulsion. This is also held in the case of Isclin v. La Coste, 5 Cir., 139 F.2d 887, and the authorities cited therein.

The case which I think is determinative of the legal question involved in the present controversy is that of Smith v. Leavenworth, 101 Miss., 238, 57 So. 803, 805, wherein the court said: "The fact that the alluvion began forming north of section 24 and opposite the land of appellant is immaterial. When it reached appellee's shore line in its southward progress, he became entitled to his portion thereof." See, also, Archer v. Southern R. Co., 114 Miss. 403, 75 So. 251.

I have not overlooked any of the authorities cited and relied upon in the very able brief of counsel for the defendant.

■■ Certainly, as to a controversy between the states, the decisions of the Supreme Court of the United States are conclusive as to that boundary line, but after that boundary line is once determined by the Supreme Court of the United States, then the ownership of the lands lying in the various states is controlled by the law of the particular state in which the particular land is located. Certainly no landowner in Mississippi could extend his line across the thalweg of the Mississippi River and claim land found in the State of Louisiana. As the Mississippi River thalweg changes, so does the boundary between the states change, and landowners in Mississippi bounded by the river would have their

lines changed accordingly. If that thalweg moved eastward, then the boundary of a Mississippi owner would likewise move easterly.

In the case of Arkansas v. Tennessee, 246 U.S. 158, 38 S.Ct. 301, 62 L.Ed. 638, L.R.A.1918D, 258, the Supreme Court of the United States said: "Although the disposal as between public and private ownership of land that emerges on either side of an interstate boundary stream, is a matter to be determined according to the law of each state, these dispositions are in each case limited by the interstate boundary, and cannot be permitted to press back the boundary line from where otherwise it should be located."

It being thus determined that the law of the State of Mississippi will govern, it becomes now necessary to determine what the facts are.

Plaintiffs' lands, at the time of the Government Survey in 1822, were riparian to the Mississippi River, and plaintiffs' predecessors in title to his land, owned to the thread of the stream, and it is, therefore, necessary to determine from all of the evidence where the thalweg of the Mississippi River and Yazoo River met on that date.

The Mississippi-Louisiana State line, the western point of both plaintiffs' and defendant's land, in 1822, was in fact the thalweg of the river opposite their respective shore lines. The thalweg is the center thread, or the channel of the navigation, being the deepest part of the river. The evidence shows that since 1822 the area here in controversy has been formed by the gradual and imperceptible addition of alluvian as accretions to the original Section 2, Choctaw District, which section is now owned by the defendant, Anderson-Tully Company; and that these accretions gradually progressed down-stream to its present terminating point.

That, from the time of the original Government Land Survey in 1822, until 1903, the main channel of the Yazoo River formed the eastern boundary of the area in controversy. As it was being formed, the flowing waters of the Yazoo River separated the area in controversy on the west from the lands now owned by the plaintiffs, lying east of the Mississippi River.

■ According to the many exhibits that were introduced in evidence, it is shown, rather clearly, that the mouth of the Yazoo River in 1822 was far north of what is is, or was, before the diversion canal was cut. The Yazoo River gradually moved southwardly, and finally crossed over the line extending east and west from the center of the stream of the Mississippi River to the western line of the uplands of plaintiffs. Likewise, these accretions that began to form on Anderson-Tully Company's land in Section 2, gradually formed and extended southward until these accretions crossed over this same line extending east and west from the center of the stream of the Mississippi River to the uplands of the plaintiffs. Under the law of Mississippi, the plaintiffs owning the bed of the stream lying between the center of the stream and its uplands, became the owner of these accretions from the point where this line extended east and west, or in substantially that direction, from the thread of the stream to the uplands of the plaintiff. So, that it is clear that under the law of Mississippi the accretions, when they began to form on the bottom of the Mississippi River that was owned by plaintiffs, became plaintiffs' lands, or those of his predecessors in title; and that those accretions which had formed on to defendant's land, became and remained the property of defendant's predecessor in title, and such accretions that lie north of this line are the property of the defendant.

I have reviewed the testimony with much care, and have reached the conclusion that the line that was surveyed and marked out by the Surveyor Corneill is the line that divides the plaintiffs' lands from those of the defendant.

■ I reached this conclusion after having considered very carefully the testimony of the expert, Mr. Richardson, who is a very skillful and learned engineer; as well as the testimony of all of the other engineers who testified. Corneill is a well qualified surveyor, and went upon the ground, with all of the information available and located this line with great care, and from all of the maps and the history of the changes of the river from about 1799 to the present time, convinces me that his line is certainly reasonably accurate, and I am, therefore, of the opinion that the plaintiffs are entitled to a judgment confirming their title to these lands, and to a mandatory judgment in the amount shown by the stipulation for the timber cut from the land in controversy in the sum of $1,500.

I am making separate Finding of Fact and Conclusion of Law.

An order may be drawn in accord herewith.