**UNITED STATES of America, Plaintiff,**

v.

**2,134.46 ACRES OF LAND, MORE OR LESS, Situate IN BURLEIGH AND MORTON COUNTIES, STATE OF NORTH DAKOTA, and Herman Bliese et al., and Unknown Owners, Defendants.**

**Civ. No. 588.**

United States District Court
D. North Dakota,
Southwestern Division.

Aug. 7, 1966.

John O. Garaas, U. S. Atty., by Richard V. Boulger, Asst. U. S. Atty., for the United States.

William R. Mills, Bismarck, N. D., for defendants Vernon F. Peterson, John Peterson, Thornton Davis and Andre J. Masson.

Bruce M. Van Sickle, of McGee, Van Sickle, Hankla & Backes, Minot, N. D., for defendants Mabel C. Small, Betty Jane McCormick, Rosemary Weigel, Royanne Bement and Walter I. Small.

Milton K. Higgins, Bismarck, N. D., for defendants Alex W. MacLean, Robert B. MacLean, William V. MacLean, Pauline M. MacLean and J. T. Ranch, Inc.

## MEMORANDUM AND ORDER

REGISTER, Chief Judge.

The sole issue to be determined by the Court is the ownership of that tract of land designated and described herein as Tract 3562.

Fee simple title to the surface of Tract 3562 has been taken by the Plaintiff for public use in connection with the construction and establishment of the Oahe Dam and reservoir in North and South Dakota. Such tract, in the condemnation proceedings, is described as follows:

> "All that portion of Lots 2 and 3 of Section 27 lying Easterly of the left bank of the Missouri River; that portion of Lots 3 and 7 of Section 28 lying Easterly of the left bank of the Missouri River. All the above in Township 137 North, Range 79 West of the Fifth Principal Meridian, together with all accretions thereto containing 184.62 acres, more or less."

There are four separate claims of ownership to portions of the tract in controversy. Vernon F. Peterson, John Peterson, Thornton Davis and Andre J. Masson are represented by William R. Mills. The claim of ownership to the surface rights by the Petersons and the claim of ownership of a portion of the mineral rights by Davis and Masson are based upon a county tax deed issued by Burleigh County, North Dakota, grantor, to Jeff Hawks, grantee, dated May 16, 1949, and filed for record in the office of the Register of Deeds on July 2, 1949. The premises described in said deed are Lots 2 and 3 in Section 27 and Lots 3 and 7 in Section 28 (along with other lands) in the township and range as above described. Government Exhibit 7 reveals that a tax deed from the State of North Dakota to Burleigh County, dated October 2, 1939, describing Lots 2 and 3 of Section 27, and a similar deed describing Lots 3 and 7 of Section 28, dated October 2, 1948, were issued for nonpayment of 1925 delinquent taxes. As a result of various quit claim deeds the claim-

ants Peterson, Davis and Masson became the successors in interest of Jeff Hawks, except for certain mineral interests which are not here involved.

A second group—Mabel C. Small, Betty Jane McCormick, Rosemary Weigel, Royanne Bement and Walter I. Small, represented by Bruce M. Van Sickle—claims to be the absolute owners in fee of that portion of Tract 3562 which lies westerly of Tract 3570 and north of a westerly extension of the south boundary line of Tract 3570. Stated in other terms, the boundary line between the Small property and the MacLean property is a line extended due west from the northernmost tip of Lot 4, Section 27. The basis of this group's claim to a portion of Tract 3562 is that all of such portion is accretion to Tract 3570 (which they concededly owned at the time of taking by the Government) and that all thereof was, at the time of taking and had been for more than thirty years prior to the taking, in the actual, open, undisputed and adverse possession of Walter I. Small, and that he had, during all of said time, paid the taxes levied thereon.

A third group of individuals—Alex W. MacLean, Robert B. MacLean, William V. MacLean and Pauline M. MacLean, represented by Milton K. Higgins—claims ownership of that portion of Tract 3562 lying west of Tract 3552. Tract 3552 was, at the time of taking, concededly owned by the MacLeans.

A fourth claimant—J. T. Ranch, Incorporated, represented by Milton K. Higgins—claims that portion of Tract 3562 which lies due west of Tract 3555. Tract 3555 was, at the time of taking, concededly owned by J. T. Ranch, Incorporated. The claims of J. T. Ranch and the MacLeans are based upon the allegation that those portions of Tract 3562 to which claim is made, respectively, are accretion to the parcels of land concededly owned by them at the time of taking. Further, these claimants contend that the accretion lands constituting Tract 3562 have been in the actual, open, notorious and undisputed adverse posses-

sion of the respective owners and their predecessors in interest for more than thirty years prior to the date of taking by the Government and, hence, said accretions, by operation of the doctrine of adverse possession, are the property of the respective owners of the adjoining bank lands.

There is no dispute concerning Tract 3562 as between the various bank land owners, and the boundary lines between them have been agreed upon. The south line of the accretion claimed by the MacLeans (which extends over and on to Tract 3562) is the extended south line of Lots 5 and 6 of Section 27, running west to the present east bank of the Missouri River. The north line of the accretion lands claimed by the MacLeans (which is identical to the south line of that accretion claimed by the Smalls) has also been agreed upon and is as heretofore stated. It should be noted that the Corps of Engineers has attributed all of the accretion lands to the east boundary of Tract 3562 as belonging to the clients of Mr. Mills; however, the southernmost tip of the island, as originally surveyed, consisted of Lot 6 of Section 28 and a small portion of Lot 1 of Section 33, purported color of title to which has not been shown in evidence.

Title to the disputed tract is to be determined as of the date of taking—that is, October 31, 1963.

From the evidence submitted, and consideration of briefs and other documents on file herein, the Court finds and concludes as follows:

The tract distribution of lands taken for the Oahe Dam and reservoir was initially made by the Cartography Department of the United States Army Corps of Engineers. The original map (Segment 35) was prepared by that department, for which reliance was placed upon the 1905 replat of the 1899 survey and a photographic survey of 1945. The original segment map did not include or describe a separate Tract 3562. Thereafter, in reliance upon the 1905 replat and the maps of the 1899 survey, the Cartography Department added Lot 7 to

Section 28, and said Department redrew Segment 35 and introduced a new tract—3562. This action was taken without the benefit of informational material regarding changes which occurred and conditions which existed between 1905 and 1945.

The lots north and east of the Fort Rice Military Reservation line (including Lot 1 of Section 27) were surveyed only once, in 1875. The land lying south and west of the Reservation line in this area was surveyed first in 1888 and, due to drastic changes in the course of the Missouri River, was resurveyed in 1899. The official Government Land Office plat therefore shows the condition of the land north and east of the Reservation line as it was at the time of the 1875 survey. Subsequent changes are indicated by projection of the water lines in Section 27, as shown on the 1899 plat. Patent on Lot 1 in Section 27 was issued to the Northern Pacific Railway Company in 1896; the chain of Walter Small's title originated with this patent. At that time (when Lot 1 went out of public domain and into private ownership) Lot 1 of Section 27 was riparian. In fact, in the year 1896 a portion of Lot 1 was "in the river."

In Oberly v. Carpenter et al., 67 N.D. 495, 274 N.W. 509, the Supreme Court stated, at page 512:

"The fact that the survey was made in 1899 and the patent was not issued until 1918 and in the meantime the river had retreated far from the shore line as it existed at the time of the survey makes no difference. 'The patent passes the title of the United States to the land, not only as it was at the time of the survey, but as it is at the date of the patent, so that the United States does not retain any interest in any accretion formed between the survey and the date of the patent.' Jefferis v. East Omaha Land Company, 134 U.S. 178, 10 S.Ct. 518, 33 L.Ed. 872."

The 1899 plat did not describe or show a Lot 7 in Section 28; the 1905 replat—not a resurvey in the technical sense—did plat said Lot 7. A patent from the United States granted Lots 2 and 3 in Section 27 and Lots 3 and 7 in Section 28 to a Carl C. Moore. Said patent was dated October 24, 1921, and filed for record on December 14, 1922. Under date of April 8, 1933, a quit claim deed was executed by Mr. Moore to Alex MacLean, granting all of said Lots (together with other lands) "and all accretions thereto," said deed being placed on record January 15, 1963.

At the time of the 1899 survey Lots 2 and 3 of Section 27, Lots 3 and 7 of Section 28, and all of the lands here involved on the east bank of the Missouri River (owned by the litigants hereto other than the clients of Mr. Mills, or their predecessors in title) were riparian, with the exception of Lot 1 in Section 27, which was riparian at the time patent thereto was issued by the United States, as hereinbefore stated. The Court is satisfied, from the evidence, that the island (of which Lots 2 and 3 in Section 27 and Lots 3 and 7 in Section 28 were a part) was completely eroded and washed away and became physically nonexistent sometime prior to the year 1933. Subsequent to that time accretion formed to the lands on the east bank of the Missouri River and the area in controversy (Tract 3562) is land formed by the process of accretion to the east bank cf the Missouri River between the year 1933 and the date of taking.

That the bank lands owned by the MacLeans (Lot 4 in Section 27), as surveyed in 1899, and the bank lands owned by J. T. Ranch, Incorporated (Lots 5 and 6 of Section 27 and Lots 1 and 2 of Section 34), as surveyed in 1899—which survey is that upon which the patents to said lands rest—constituted the east bank of the Missouri River and were riparian at the time of the 1899 survey is clearly established by the evidence.

The Court further finds, from the evidence, that the respective owners of the east bank lands (meaning the litigants other than those represented by Mr. Mills) paid, during the pertinent

times involved, all taxes on the accreted lands during the accretion process and to the extent thereof, by virtue of their payment of taxes levied and assessed against the described bank lands to which the accretion was formed. In this connection, see: Chicago Mill & Lumber Co. v. Tully et al., 8 Cir., 130 F.2d 268; Anderson-Tully Co. et al. v. Chicago Mill & Lumber Co., 8 Cir., 175 F.2d 735; and Ward Redwood Co., Inc. v. Fortain et al., 16 Cal.2d 34, 104 P.2d 813.

While *Anderson-Tully Co.*, supra, involves Arkansas law, it is interesting to note that the appellants therein based their claims of ownership upon tax title, and payment of taxes (as do the clients of Mr. Mills herein), and the appellee contended that the disputed land was accretion to appellee's riparian ownership (as do the other claimants herein). It would seem that the general principles discussed and the reasoning of the Court, speaking through Judge Woodrough (175 F.2d p. 738), are apropos in the instant case.

■ In determining the ownership of Tract 3562, it is the function and duty of this Court to interpret and apply the established law of North Dakota to the facts as disclosed by the evidence. On behalf of their clients, Mr. Higgins and Mr. Van Sickle contend that the applicable law is that pronounced by the Supreme Court of North Dakota in *Oberly*, supra. Mr. Mills, on behalf of his clients, insists that the 1965 decision of said Court in Perry v. Erling, N.D., 132 N.W.2d 889, is applicable and controlling. In view of these positions, a short review of those decisions is deemed advisable.

In both of said cases the Supreme Court of North Dakota interpreted what is now Section 47–06–05, NDCC, quoted as follows:

"47–06–05. Riparian accretions. —— Where from natural causes land forms by imperceptible degrees upon the bank of a river or stream, navigable or not navigable, either by accumulation of material or by the recession of the stream, such land belongs to the owner of the bank, subject to any existing right of way over the bank."

■ In *Oberly* the title dispute involved deeded lands owned by the plaintiff therein which were bounded on the south by the Missouri River at the time of an 1899 survey. The fractional subdivisions were meandered, and the meander lines were coincident with the north bank of the river. The Court stated, 274 N.W. at page 510:

"The present controversy between the plaintiff and the defendants is as to the ownership and right of possession of the tract which now lies between the meander lines on the south sides of the plaintiff's lots as laid out in the government survey of 1899 coincident with the north bank of the river as it then ran, and the north bank of the river as it ran in September, 1933, and at the time of the trial. The plaintiff claims this tract as an accretion to his lots. The defendants deny this claim and assert right of possession and ownership thereof by virtue of their respective homestead entries."

Further, at page 513, the Court said:

" * * * the law governing riparian rights has no regard for artificial boundary lines, whether between sections or their subdivisions, or between counties, states, or nations. * * * The controlling rule as it applies in the instant case may be stated thus: 'Where a water line is the boundary of a given lot, that line, no matter how it shifts, remains the boundary, and a deed describing the lot by number or name conveys the land up to such shifting line exactly as it does up to a fixed side line and conveys all accretion thereto.' Jefferis v. East Omaha Land Company, supra."

In *Perry* the Court was faced with an entirely different factual situation in that the owner of land which was remote and non-riparian at the time of the original survey, but which later became riparian (subsequent to the issuance of patent), claimed ownership of land there-

after formed by accretion, and which accreted area extended over the location formerly occupied by originally riparian land. The Court therein held, in effect, that, in view of the facts present, Section 47–06–05 was not applicable. Prior decisions of the Court were thoroughly discussed. Regarding *Oberly*, the Court stated (page 895, 132 N.W.2d):

> "Oberly involved a contest between a riparian owner on the north side of the Missouri River and a riparian owner on the south side. The court, in effect, held that accretions to the north bank of the Missouri River became the property of the riparian owner of the north side of the river, even though the accretions extended, as the river's course moved to the south, over an area formerly occupied by land of the riparian owner of the south bank of the Missouri River."

Further, the Court made it very clear in *Perry* that (page 892) "Heretofore this court has not been asked to apply this statute [Section 47–06–05] to factual situations similar to this case.", that the sole question presented in attempting to apply the statute to the facts of that case was (page 896): "Does the accreted land belong to the bank or riparian owner according to the original survey or to the owner of the bank at that moment in time when the process of erosion terminates and the process of accretion begins.", and that the declaration of the Court is (page 897):

> "We therefore conclude that where land which was riparian at the time of the original survey is lost by erosion, so that nonriparian land becomes riparian, and land is thereafter built by accretion to the land which was originally nonriparian, extending over the location formerly occupied by the original riparian land, the owner of the land which was originally nonriparian has title only to the accreted land within the boundaries of the formerly nonriparian tract; and that all other land so accreted, extending over the area formerly occupied by the land of the original riparian owner, becomes the property of the owner of the original riparian land."

It is evident that the law of North Dakota as it concerns riparian rights and accretion lands, as pronounced in *Oberly*, was not intended to be modified—and was not in fact modified—by the decision in *Perry*. Each decision was the result of the application of the facts therein found to the quoted statute—facts which were clearly distinguishable and were clearly distinguished by the Court in *Perry*.

■ By way of further emphasis that the criteria is whether, at the time of the original survey the lands to which accretion was formed were riparian or remote, Justice Teigen, in his special concurring opinion, stated (pages 901 and 902, 132 N.W.2d):

> "Thus it is clear to this writer that Section 47–06–05, N.D.C.C., which provides that where from natural causes land forms by imperceptible degrees upon the bank of a river or stream, either by accumulation of material or by the recession of the stream, such land belongs to the owner of the bank, was enacted by way of indemnity to the fractional lot owner bordering upon a stream for losses which he might suffer by action of the stream; * * * Where, however, subdivisions are bounded on all four sides by government subdivision lines and are remote lands, the statute, Section 47–06–05, supra, is not applicable."

■■ This Court is satisfied from all the evidence and the applicable law that Section 47–06–05, NDCC, is applicable to the facts herein found; that the facts found in the instant case bring it within the doctrine found in *Oberly*, supra; and that the decision in *Oberly*, supra, is applicable and controlling.

Counsel for the prevailing parties (claimants Small and MacLean and J. T. Ranch, Incorporated) will prepare and submit appropriate findings, conclusions, order for judgment and judgment.

It is so ordered.