**Vernon F. PETERSON et al., Appellants,**

**v.**

**UNITED STATES of America et al.,**
**Appellees.**

**No. 18690.**

United States Court of Appeals
Eighth Circuit.

Oct. 25, 1967.

William R. Mills, Bismarck, N. D., made argument for appellants and filed brief.

Milton K. Higgins, Bismarck, N. D., for appellee; Bruce M. Van Sickle, of McGee, Van Sickle, Hankla & Backes, Minot, N. D., was on the brief.

Before MEHAFFY and GIBSON, Circuit Judges, and STEPHENSON, District Judge.

MEHAFFY, Circuit Judge.

The sole issue here is the ownership of a tract of land in North Dakota condemned by the United States, along with other land, for the construction of the Oahe Dam and Reservoir. The tract with which we are concerned is designated as No. 3562 located in Burleigh County and described in the condemnation proceedings as:

All that portion of Lots 2 and 3 of Section 27 lying Easterly of the left bank of the Missouri River; that portion of Lots 3 and 7 of Section 28 lying Easterly of the left bank of the Missouri River. All the above in Township 137 North, Range 79 West of the Fifth Principal Meridian, together with all accretions thereto containing 184.62 acres, more or less.

The tract involved is accretion land formed in the Missouri River and the disputed ownership stems from the former existence of an island in the river. The appellant group, described in more detail hereafter, predicate their rights on claimed ownership of certain island lots and asserted accretions thereto, whereas appellee group, consisting of owners of riparian lots on the east bank of the Missouri River across from the former island, claim ownership of the disputed land asserting it to be accretion to the bank land lots.

The District Court found that, at least by the year 1933, the island had completely eroded away and that the land in question was formed by accretions to the east bank of the river and, therefore, belongs to appellees. The District Court opinion sub nom. United States v. 2,134.-46 Acres of Land, etc. is published at 257 F.Supp. 723 (1966). We affirm.

*The Parties, the Basis of Their Claims, and the Court's Findings.*

Appellants Vernon F. Peterson, John Peterson, Thornton Davis and Andre J. Masson base their claim of ownership on a tax deed issued by Burleigh County, North Dakota, grantor, to Jeff Hawks, grantee, dated May 16, 1949, and filed for record in the office of the Register of Deeds on July 2, 1949, describing, along with other lands, Lots 2 and 3 in Section 27 and Lots 3 and 7 in Section 28, of Township 137 North, Range 79 West. This is the description of some island lots surveyed and platted in 1899. (The 1899 plat did not show Lot 7 in Section 28, but the 1901 amended plat and the 1905 replat did show Lot 7.) As a result of various quitclaim deeds, the Petersons became the successors in interest of Jeff Hawks to the surface rights and Davis and Masson became Hawks' successors in interest to a portion of the mineral rights. The court found from the evidence "that the island (of which Lots 2 and 3 in Section 27 and Lots 3 and 7 in Section 28 were a part) was completely eroded and washed away and became physically nonexistent sometime prior to 1933," and that "the area in controversy (Tract 3562) is land formed by the process of accretion to the east bank of the Missouri River between the year 1933 and the date of taking."

Appellees, originally consisting of two groups of individuals and a corporation who owned three adjacent tracts of land riparian to the east bank of the Missouri River at the time of patent, had previously agreed upon a division among themselves of the accreted lands involved herein by extending their property lines west to the river. Appellants have dismissed this appeal as to one of the groups consisting of Mabel C. Small, Betty Jane McCormick, Rosemary Weigel, Royanne Bement and Walter I. Small. No reason now exists to discuss the interests of the dismissed parties.

Appellees Alex W. MacLean, Robert B. MacLean, William V. MacLean and Pauline M. MacLean claim ownership to that portion of Tract 3562 lying west of Lot 4 of Section 27, Township 137 North, Range 79 West, designated as Tract 3552, which they concededly owned at the time of taking. Lot 4 was surveyed for the Government in 1899, and the patent was issued in accordance with the official plat made therefrom. It was riparian at the time of the 1899 survey and the MacLeans are successors to the paten-

tee through a succession of transfers, subject to certain severed mineral rights not material here. The court found that the MacLeans, or their predecessors in title, paid, for more than twenty years prior to the commencement of this action, all taxes on the said Lot 4, together with the accretion formed thereto, and during all of that time remained in open, notorious and adverse possession of Lot 4 and its accretion, and that at the time of taking, all that part of Tract 3562 lying west of Tract 3552 was owned in joint tenancy by Alex W. MacLean, Robert B. MacLean and William V. MacLean, subject to a life estate in Pauline M. MacLean.

J. T. Ranch, Inc. claims that portion of Tract 3562 which lies west of Tract 3555, which it concededly owned at the time of the taking, and south of the accretion claimed by the MacLeans. The legal description of the property owned by J. T. Ranch, Inc. is Lots 5 and 6 of Section 27, and Lots 1 and 2 of Section 34, Township 137 North, Range 79 West. These lots were surveyed for the Government in 1899 and patents subsequently issued in accordance with the official plat. All of these lots were riparian at the time they were surveyed in 1899, and J. T. Ranch, Inc. is successor to the patentee through a succession of transfers, subject to certain severed mineral rights not material here. The court found that J. T. Ranch, Inc., or its predecessors in title, paid, for more than twenty years prior to the commencement of this action, all taxes on the above-described lots, together with the accretion formed thereto, and during all of that time remained in open, notorious and adverse possession of these lots and their accretion.

### The Record Evidence.

■ Cases of this type are always annoyingly difficult, requiring as they do a perusal of old maps, surveys, and other documents. Our careful review of the entire record compels the conclusion that the evidence was amply sufficient to justify the trial court's finding that the island became physically nonexistent sometime prior to 1933 and that the area in controversy is land formed by accretion to the east bank of the river between the year 1933 and the date of taking by the Government. Additional to the many plats, maps, surveys, aerial photographs and other exhibits, there were knowledgeable witnesses who positively testified as to these facts. Alex W. MacLean, who was born in 1901 and lived in the area all of his life, testified that as a young boy he well remembered the island; that it was then heavily timbered; that when he was eleven or twelve years old the eastern part of the island was occupied by Mr. A. J. "Angus" Nicholson and the balance by Mr. Carl Moore, who had a hunting shack and spent part time there; that the river took the western part of the island about 1913 and the balance in 1916 or 1917; and that Mr. Nicholson lived there until 1913. The evidence disclosed that on April 8, 1933 Mr. Moore quitclaimed his island lots, which were the same as those claimed by appellants, and all accretions thereto to Alex MacLean, the father of Alex W. MacLean. Actually, according to the evidence, the lots were in the river at that time and in any event the deed was not discovered until the elder Mr. MacLean's death and not placed of record until January 15, 1963.

Alex W. MacLean also testified that he participated in making the survey in 1933 and there was no island there then. This testimony was corroborated by Robert B. MacLean, a brother of Alex W., who also participated in making the 1933 survey. The evidence further reveals that the appellee land bank owners at all times used the accreted land extending to the river, fencing it in 1933 or 1934, and using it thereafter as pasture and timber land from which some of the trees cut were two feet in diameter.

Mr. Walter Small testified that his father farmed their place on the river bank and in fact fenced up what had been the old river bed, and that he personally started farming a small tract in 1954 after his father's death.

Appellants did not produce any witness in contradiction of this evidence which

alone would suffice in our opinion to justify the trial court's findings. Furthermore, there is not a scintilla of evidence to indicate that appellants ever attempted to locate the land in controversy or exercise any control over it. They did, however, after succeeding to the tax title acquired by Mr. Jeff Hawks in 1949, pay taxes on the descriptions contained in their deed. The appellee bank land owners also continued to pay taxes assessed against their described bank lands to which the accretion was formed.

It is interesting to note that in 1947 or 1948, prior to the time Jeff Hawks obtained a tax deed from the county under which appellants now claim title, one John F. Baker acquired a tax title to Lots 2 and 3 of Section 27, but after attempting to locate the property and finding that the island was no longer in existence he reconveyed or quitclaimed the lots to Burleigh County on January 14, 1948.

 In our view, the evidence lends no support to appellants' contention that the land between the island and shore gradually filled in until there was no longer any water there and that the boundary of the island lots is the last thread of dried up stream between the island and the shore. As stated, appellants produced no witnesses to establish their theory, relying solely on the abstract of title and other documentary evidence which lends tenuous support, if any, to their theory, and finds direct conflict with appellees' evidence aforementioned, which the trial court was justified in crediting and we feel compelled to sustain. The rule is that findings of the District Court are presumptively correct and must be sustained unless clearly erroneous. As a reviewing court, we are not privileged to substitute our judgment for that of the District Court and must view the evidence favorably to the successful party. If the District Court's findings are supported by substantial, competent evidence, they must be sustained. Colorado Milling & Elevator Co. v. Terminal R. Ass'n. of St. Louis, 350 F.2d 273, 277 (8th Cir. 1965), cert. denied, 382 U.S. 989, 86 S.Ct. 563, 15 L.Ed. 2d 476 (1966); Fremont Cake & Meal Co. v. Wilson & Co., 183 F.2d 57 (8th Cir. 1950); Federal Sav. & Loan Ins. Corp. v. First Nat'l Bank, 164 F.2d 929 (8th Cir. 1947); F. W. Fitch Co. v. Camille, Inc., 106 F.2d 635 (8th Cir. 1939).

### The Legal Issues.

The tract consisting as it does of accretions to the east bank of the Missouri River, Section 47–06–05 N.D.C.C. is the applicable North Dakota statute and it states:

"Where from natural causes land forms by imperceptible degrees upon the bank of a river or stream, navigable or not navigable, either by accumulation of material or by the recession of the stream, such land belongs to the owner of the bank, subject to any existing right of way over the bank."

 Appellants contend, however, that the case of Perry v. Erling, 132 N.W.2d 889 (N.D.1965), is controlling here. Much has been written about the *Perry* opinion and we will not undertake to completely analyze it as the facts in this case are clearly distinguishable. In *Perry* the court dealt with land which was riparian at the time of the original survey and lost by erosion so that non-riparian land became riparian. Thereafter, land built by accretion to the land which was originally non-riparian extended over the location formerly occupied by originally riparian land. The court held that the owner of the land originally non-riparian has title only to the accreted land within the boundaries of the formerly non-riparian tract and that all other land so accreted and extending over the area formerly occupied by the land of the original riparian owner becomes the property of the owner of the originally riparian land. The factual distinction is that in the case at bar the land of the appellees was riparian at the date of survey and patent and under such cirmumstances the water line would continue to be the boundary, no matter how it shifts due to the addition of accretion; and, further, *Perry* concerned two parcels

of bank land—riparian and remote—whereas we are concerned with island lots and bank lots.

The North Dakota court held in Oberly v. Carpenter, 67 N.D. 495, 274 N.W. 509, 513 (1937) that:

> "The controlling rule as it applies in the instant case may be stated thus: 'Where a water line is the boundary of a given lot, that line, no matter how it shifts, remains the boundary, and a deed describing the lot by number or name conveys the land up to such shifting line exactly as it does up to fixed side line and conveys all accretion thereto.' Jefferis v. East Omaha Land Company, supra. [134 U.S. 178, 10 S.Ct. 518, 33 L.Ed. 872 (1890)]"

Chief Judge Register in his memorandum, 257 F.Supp. at 727, 728, discusses this legal problem more extensively, calling attention to the fact that *Perry,* supra, made it plain no modification of the *Oberly* rule was intended and that each decision stood on its own peculiar facts.

■ The basic flaw in appellants' argument is that it is bottomed upon the erroneous assertion that appellants treat as a conclusion that the island did not completely become nonexistent and that always there was a thread of island land to which accretions could attach. The record evidence simply does not support such assertion or conclusion. Contrarily, it supports the trial court's holding that since 1933 the island had been nonexistent and from at least that date the tract in controversy was accretion land attaching itself to the bank land lots of appellees, who became the owners thereof, despite the fact that the tract extends over an area formerly occupied by island lots, on which appellants hold a tax title. See in this connection Hogue v. Bourgois, 71 N.W.2d 47, 54 A.L.R.2d 633 (N.D. 1955), where the facts showed that a large part of the mainland washed away and a nearby island grew by accretion over a part of the area formerly occupied by the mainland. The court held that the accretion which formed to the island belonged to the owners thereof, regardless of the fact that the island extended over a location formerly occupied by the mainland. In the present case it is the mainland to which the accretion has attached itself, and by the same token it becomes the property of the owners of the bank lands to which it has accreted.

We have also considered and find no merit in the asserted failure of appellees to establish their titles by adverse possession. Appellees' titles are not dependent upon adverse possession, but we note from the court's findings that appellees and their predecessors in interest had for more than twenty years remained in open, notorious and adverse possession of the disputed land and its accretions and for the same period paid taxes on it. See and compare Anderson-Tully Co. v. Chicago Mill & Lumber Co., 175 F.2d 735 (8th Cir. 1949), and the trial court's discussion in its memorandum opinion, 257 F.Supp. 723, 726 and 727.

North Dakota's longest limitation statute against adverse ownership is twenty years and Section 28–01–11 N.D.C.C. provides:

> "*Acts constituted adverse possession not based upon a written instrument.*— For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument nor upon a judgment or decree, land shall be deemed to have been possessed and occupied only in the following cases:
>
> "1. When it has been protected by a substantial enclosure; or
>
> "2. When it has been usually cultivated or improved."

So it is that appellees, even if they had not been in possession under color of title, had been in actual, notorious and adverse possession for more than the twenty-year statutory period.

We, therefore, completely agree with the learned trial judge in his fact finding as well as with his interpretation of the North Dakota law.

The judgment is affirmed.