Thomas M. JENNINGS, Plaintiff and Respondent,

v.

George E. SHIPP, Pearl Shipp, and all other persons unknown claiming any estate or interest in, or lien or encumbrance upon the property described in the Complaint, Defendants and Appellants.

No. 7976.

Supreme Court of North Dakota.

May 4, 1962.

Jansonius, Fleck, Smith, Mather & Strutz, Bismarck, N. D., for defendants and appellants.

Thompson & Lundberg, Bismarck, N. D., for plaintiff and respondent.

RAY R. FRIEDERICH, District Judge.

This is an action to quiet title. By the original Government Survey in 1874, fractional Section 10, Township 139 North, Range 81 West, was laid out in the form of an isosceles right triangle, the north side being 24.8 chains in length, the east side 25.17 chains, and the hypotenuse of the triangle being the meander line along the east bank of the Missouri River running north 44¾ degrees west, a length of 35.2 chains. This triangular tract contained 36.21 acres, and was designated as Lot 1 in the foregoing section. The United States Government conveyed the property by patent to the plaintiff's predecessor in interest. Prior to the commencement of this action, the plaintiff conveyed to one who is not a party to this action all of the property comprising the original triangle, it being his intention to retain the accretions to the original tract. The Missouri River, which constituted the boundary on one side of this triangular tract, has characteristically been known to undulate in varying degrees, thereby causing either accretion or reliction of property bounded by the river. According to the testimony, over a period of approximately forty years, either by the recession of the stream or by the accumulation of various materials, an accreted area has developed to where the river now is approximately 1536 feet from the original meander line, leaving a substantial tract of land between the meander line and the present water line. From an examination of all the evidence it would appear that the meander line as established

by the 1874 original survey was also the approximate shore line or water line on that date. The issues involve the ownership of lands formed as an accretion to the east bank of the Missouri River that formed between the meander line as established by the original survey of 1874 and the present bank of the Missouri River. The plaintiff brought this action to quiet title to a portion of the accreted lands. The defendants counterclaimed and asked that title be quieted in them to a portion of the same lands.

More specifically, it is claimed that the plaintiff having conveyed the upland, of which the accretions became a part, such accretions passed to the grantee of the upland, even though not described in the conveyance. The defendants further contend that the trial court did not apportion the new shore line in proportion to the respective frontage on the old shore line. It is contended by the defendants that they have acquired an interest in the accreted portion by adverse possession and are therefore entitled to it irrespective of the rule applicable to the division of accreted lands. Plaintiff, the respondent herein, maintained in the lower court, and claims here, that the north and east section lines of Section 10 should be extended to the present water line, and that all accreted areas between these extended lines are a part of the original Lot 1.

■ Certain matters have been so well settled that they may be summarily disposed of at the outset. In Oberly v. Carpenter, 67 N.D. 495, 274 N.W. 509–513, this Court said:

"The defendants further insist that, in any event, the new land thus added to the plaintiff's land and to which plaintiff claims title under section 5473, cannot extend beyond the section line between section 24 and 25, and section 23 and 26. The first answer to this contention is that at the time of the survey this section line was not run north of the river. The second and conclusive answer is that the law governing riparian rights has no regard for artificial boundary lines, whether between sections or their subdivisions, or between counties, states, or nations. See the illuminating opinion of Mr. Justice Brewer in Nebraska v. Iowa, [143 U.S. 359, 12 S.Ct. 396, 36 L.Ed. 186] supra. See, also, Widdecombe v. Chiles, 173 Mo. 195, 73 S.W. 444, 61 L.R.A. 309, 96 Am.St.Rep. 507; Yearsley v. Gipple, 104 Neb. 88, 175 N.W. 641, 8 A.L.R. 636; Doebbeling v. Hall et al., 310 Mo. 204, 274 S.W. 1049, 41 A.L.R. 382."

From this holding it is quite conclusive that the defendants' contention that the east and north section lines of Section 10 should be extended until they reach the present water line is without foundation.

■ The trial court found that the defendants' claim of title by adverse possession is not substantiated by the evidence, and we concur in this finding.

■ As to the claim that a conveyance of the upland presumptively carries with it the accretion attached thereto, we find such a presumption rebuttable. Lynch v. Kupfer, 134 Cal.App. 652, 26 P.2d 33–34. Evidence may show an intent to separate the two. The evidence in this case shows that the last portion of the original tract was conveyed on August 5, 1949. The only person who might claim an interest in this accretion is the grantee of the original tract contiguous to it, and he apparently has laid no claim to it, at least the record does not reflect such a claim. In a Nebraska case, Conkey v. Knudsen, 135 Neb. 890, 284 N.W. 737–739, the Court said:

"It is clear in the record that after plaintiff sold the south half of the north half of section 13 to Christensen, he retained possession of the accretions thereto. The only person who might establish a record title to any of these accretions is Christensen and he disclaims any interest therein. We

think plaintiff has sufficient title to maintain this suit against these defendants under the holding in Ellsworth Corporation v. Stratbucker, supra (134 Neb. 246, 278 N.W. [381], 382).".

Having thus eliminated the claim of adverse possession, and the contention that plaintiff no longer retains an interest in the accreted tract sufficient to substantiate a quiet title action, we now confine our discussion to the real problem, that is, the establishment of the boundary line, or in other words, the division of the accretion that has resulted since the original Government Survey in 1874.

■ A search of the North Dakota case law does not reveal this precise question has ever been before this Court. In most of our neighboring states where the Missouri River also persists in the privilege of changing its course from time to time, such as South Dakota, Iowa and Nebraska, this question has been litigated. The trial court has correctly stated the rule of law, commonly known as the doctrine of accretion, namely;

"The fundamental theory underlying the ownership of accretions is that each of the several riparian owners shall have a frontage on the new shore proportionate to his frontage on the old one, connecting their respective points by straight lines. * * *

"The main objects to be kept in view in any division of accretions is that the division shall be equitable and that it shall be proportional so as to give each shore owner a fair share of the land to be divided and his due portion of the new shore line proportionate to his share on the original line of the water." Gardner v. Green, 67 N.D. 268, 271 N.W. 775.

See also: Berry v. Hoogendoorn, 133 Iowa 437, 108 N.W. 923; Hathaway v. City of Milwaukee, 132 Wis. 249, 111 N.W. 570, 9 L.R.A.,N.S., 778, 122 Am.St.Rep. 975, rehearing denied 132 Wis. 249, 112

N.W. 455, 9 L.R.A.,N.S., 778, 122 Am.St. Rep. 975.

It is in the application of this rule of law that difficulty arises. Much emphasis by both counsel for the plaintiff and the defendants has been placed upon the rule of law laid down by this Court in the case of Gardner v. Green, supra. In that case, page 783 of 271 N.W. we said:

"But the survey line between lots 5 and 7 is not to be projected for the purpose of dividing accretions, that is, land that came into existence after the lots were laid out. Kehr v. Snyder, 114 Ill. 313–317, 2 N.E. 68, 55 Am.Rep. 866. It is to be projected only for the purpose of establishing the boundaries of the tracts as they were laid out, and to divide land then in existence between the meander line, as shown on the plat, and the shore line of the river. Land formed subsequent to the time the lots were laid out *must be apportioned among the owners of lands fronting on the river in accordance with the rules applicable to the apportionment of accretions.*" (Emphasis ours.)

In other words, Gardner v. Green, supra, is not authority in the instant case, because in the Green case the dispute involved a tract of land between the meander line and the shore line of the river as it existed at the time of the official United States Government Survey. In the instant case the meander line and the shore line were substantially the same at the time of the 1874 U. S. Government Survey, and the problem is strictly concerned with the rules applicable to the apportionment of accretions. Having stated the rule of law which governs, we examine its applicability.

The Nebraska court, reviewing this rule of law in Conkey v. Knudsen, 143 Neb. 5, 8 N.W.2d 538, quotes another text writer as follows:

" 'The division of such rights among riparian owners has been a fruitful source of litigation and the courts have

promulgated certain rules for the partition thereof, which have been exceedingly useful to the professions. Among such rules we find the following: 1. Measure the ancient bank and compute the number of feet owned by each proprietor. 2. Divide the new bank into as many equal parts as there were feet in the old bank and draw lines from the old points of division to the new ones.' Clark, Surveying and Boundaries, 2d Ed., sec. 251. As early as 1835 the supreme court of Massachusetts applied the foregoing rule in the following language: 'The rule is, 1. To measure the whole extent of the ancient bank or line of the river, and compute how many rods, yards or feet, each riparian proprietor owned on the river line. 2. The next step is, supposing the former line, for instance, to amount to 200 rods, to divide the newly formed bank or river line into 200 equal parts, and appropriate to each proprietor as many portions of this new river line, as he owned rods on the old. Then, to complete the division, lines are to be drawn from the points at which the proprietors respectively bounded on the old, to the points thus determined as the points of division on the newly formed shore. The new lines, thus formed, it is obvious, will be either parallel, or divergent, or convergent, according as the new shore line of the river equals, or exceeds or falls short of the old.' "

The application of this rule as outlined in the previous quotation appears to us to be practical and sensible. It is obvious, however, that certain evidentiary facts are absolutely necessary before this rule can be applied properly. In one of the earlier Iowa cases, Berry v. Hoogendoorn, 133 Iowa 437, 108 N.W. 923, the Court was confronted with much the same problem we are in this case. At page 926 of 108 N.W. the Court said:

"We understand from the authorities on the subject that it would be necessary to ascertain the length of the new shore line between the points of its departure from the old shore line and the length of the corresponding portion of the old shore line, so that the new line might be apportioned in parts corresponding to the parts of the old shore line belonging to the different owners. If this had been done, then the accretions would be divided up by running straight lines from the points on the old line to the corresponding points on the new."

While the trial court has correctly stated the rule of law, it is mathematically impossible to apply this rule of law in the apportionment of the new shore line to that of the old, when the entire length of either the new or the old shore line is not included in the evidence. The Court, in the Hoogendoorn case, supra, said:

"Without such means of apportionment, we are unable to say how much of the shore line south of the point F on the plat should have been apportioned to plaintiff."

The trial court in the instant case drew a line from the northwest corner of the original triangular plot perpendicular to the river, and then drew another line through the southeast corner of the triangle to the river and parallel to the first line. The accreted area between these two parallel lines, the Court held, was the area accreted to Lot 1 of Section 10. Whether these two lines should be parallel, divergent or convergent could only be determined after ascertaining the length of the old shore line and the length of the new shore line and appropriating to each proprietor along the accreted area a proportionate portion of the new river line. By applying the rule in the proportional division of accreted land among the riparian owners, the lines formulating the boundary would be parallel only if the new shore line were exactly the same length as the old shore line. That this is not true in the instant case is clearly evident from an examination of Exhibit 10, and from

the further fact that the hypotenuse of the original triangle of Lot 1, Section 10, ran north 44¾ degrees west, while the hypotenuse of a triangle formed by the extension of the east and north boundaries of Section 10 now runs north 39′ 14″ west, as shown by Plaintiff's Exhibit 1.

■ This case is here for trial de novo under Section 28–27–32, NDCC. What we have heretofore said resolves all the issues of title except the establishment of a dividing line between portions of the accreted lands claimed by the contending parties. We have also determined that the trial court stated the correct rule by which the division shall be determined, but the record does not contain and there was not before the trial court sufficient evidence for the proper application of that rule. The old shore line against which the accretions were built has been conceded to be the meander line established by the 1874 survey. The length of that line to the extent that it formed the original boundary of the property in dispute can be calculated from the exhibits showing the original survey but the determination of the length of the part of the present shore line to which these litigants are entitled cannot be determined or calculated from the exhibits or other evidence in the record. That determination will require establishment of the points of departure (which cannot be located from the evidence in the record) of the present shore line from the line of the old shore and the determination of the lengths of both shore lines with respect to the entire body of accreted land. When the lengths of the shore lines between the points of departure have been ascertained it will be possible to determine the proportionate share of the present shore line to which each riparian owner is entitled, including the shares of the litigants.

The trial court attempted to make a determination of the dividing line between the properties of the parties to this action as best he could with the evidence before him. His decision seemingly approaches the result that would be obtained by applying the rule after all the facts necessary to a decision have been established. However, we cannot affirm or reverse a judgment on the basis of conjecture.

The record does not show the value of the land in dispute or afford a basis for estimating the cost of determining the length of the present shore line which may require extensive surveys. It may be that the expense of a new trial of this issue may be disproportionate to the benefits that can be obtained by either party upon a new trial of the issue involved in locating the dividing line.

■ As stated in McCoy v. Paxton, 156 Iowa 194, 135 N.W. 1091:

"* * * it is entirely competent for the adjoining owners to agree how the accreted land shall be divided, and this is true regardless of the exact legal right that either may have therein."

The case is remanded for a new trial on the question of the lengths of the shore lines with respect to the accreted properties claimed by the respective parties. After they have been established, the trial court is directed to apportion the new shore line between the parties in parts corresponding to the ownership of the old shore line, and determine the boundary line between the two tracts by drawing a straight line between a point on one shore line where the segments owned by the respective parties join to a similar point on the other shore line and modify or amend the judgment accordingly.

A new trial conformable to this opinion is ordered.

SATHRE, C. J., and MORRIS, BURKE and TEIGEN, JJ., concur.

STRUTZ, J., deeming himself disqualified did not participate, Honorable RAY R. FRIEDERICH, one of the Judges of the Second Judicial District, sitting in his stead.