905 F.2d 180
 20 Envtl. L. Rep. 21,331
 101 RANCH, a North Dakota Partnership, consisting of Steve
Ward, Imogene Christensen and Claire Engelhardt, Appellants,
Carlyle Brey, Arnold Yri and Vernyll Yri, Ruby Martinson,
Miles Maddock and Dorothea Maddock, Olfa Solheim and Mabel
Solheim, Minnie Johnson, and Frances P. Schneider and Gloria
Schneider, Gail Anderson, Gerald Tofsrud, Mabel Martinson,
Helen Martinson, Astrid Martinson, Hulda Martinson and
Lutheran Bible Institute of Seattle,
v.
UNITED STATES of America, Appellee,
and State of North Dakota and Board of Directors, Garrison
Conservancy District, Intervenor-Defendant Below.
 No. 89-5176.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 15, 1990.
Decided May 30, 1990.
 
 1
 Frank T. Knox, Fargo, N.D., for appellants.
 
 
 2
 Murray G. Sagsveen, Bismarck, N.D., for appellee.
 
 
 3
 Before MCMILLIAN and BEAM Circuit Judges, and LARSON,* Senior District Judge.
 
 
 4
 LARSON, Senior District Judge.
 
 
 5
 Plaintiff 101 Ranch, a North Dakota partnership, appeals from a judgment in favor of the United States in a quiet title action brought by plaintiff pursuant to 28 U.S.C. Sec. 2409a. Plaintiff owns land adjacent to the West Bay of Devils Lake, a navigable body of water located in northeastern North Dakota. As an incident of statehood in 1889, North Dakota acquired title to the bed of Devils Lake, which it conveyed to the United States in 1971. Plaintiff seeks to quiet title in lands which are now a part of the lakebed, arguing title vested in plaintiff as a result of a quiet title action in 1929 and a deed from the state given in 1949. We affirm the district court's[1] judgment, 714 F.Supp. 1005, vesting title to the submerged lands in the United States.
 
 I.
 
 6
 After granting defendant's motion for summary judgment in part, the district court referred this matter to a magistrate,[2] who acted as a special master pursuant to 28 U.S.C. Sec. 636(b)(2) and Fed.R.Civ.P. 53. The magistrate's report effectively sets out the facts and governing principles of law.[3]
 
 
 7
 When the Original Colonies ratified the Constitution, they succeeded to the Crown's title and interest in the beds of navigable waters within their respective borders. See Utah Division of State Lands v. United States, 482 U.S. 193, 195-96, 107 S.Ct. 2318, 2320-21, 96 L.Ed.2d 162 (1987); Bonelli Cattle Co. v. Arizona, 414 U.S. 313, 317-18, 94 S.Ct. 517, 521-22, 38 L.Ed.2d 526 (1973), overruled on other grounds, Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co., 429 U.S. 363, 97 S.Ct. 582, 50 L.Ed.2d 550 (1977). Under the equal footing doctrine, new states were admitted with "the same rights, sovereignty and jurisdiction ... as the original States possess within their respective borders." Bonelli, 414 U.S. at 318, 94 S.Ct. at 522. Accordingly, title to lands beneath navigable waters passed from the federal government to the states upon their admission to the Union. Id.
 
 
 8
 In 1889, when North Dakota was admitted to the Union, Devils Lake covered an area in excess of 60,000 acres. Steamboats carrying lumber, machinery, general merchandise, mail, and passengers regularly plied the lake. North Dakota thus received title to the lakebed as an incident of statehood. See In re Matter of the Ownership of the Bed of Devils Lake, 423 N.W.2d 141, 142 (N.D.1988).
 
 
 9
 Title to beds beneath navigable waters is held by the sovereign as a public trust for the public. Bonelli Cattle, 414 U.S. at 321-22, 94 S.Ct. at 523-24.
 
 
 10
 Such waters ... are incapable of ordinary and private occupation, cultivation and improvement; and their natural and primary uses are public in their nature, for highways of navigation and commerce, domestic and foreign, and for the purpose of fishing....
 
 
 11
 Id. at 322, 94 S.Ct. at 524. "Public purposes" are not limited to trade and commerce, however: "[p]urposes of pleasure, public convenience, and enjoyment may be public as well as purposes of trade." Roberts v. Taylor, 47 N.D. 146, 181 N.W. 622, 625-26 (1921).
 
 
 12
 In order for the states to guarantee full public enjoyment of their navigable watercourses, the sovereign's title automatically follows gradual changes in the boundary of a water body. Bonelli Cattle, 414 U.S. at 318, 94 S.Ct. at 522; Roberts, 181 N.W. at 626. For terminal lakes such as Devils Lake, the doctrines of reliction and submergence define the boundary between public and private interests. See California ex rel. State Lands Commission v. United States, 805 F.2d 857, 864-65 (9th Cir.1986), cert. denied, 484 U.S. 816, 108 S.Ct. 70, 98 L.Ed.2d 34 (1987); In re Ownership of Bed of Devils Lake, 423 N.W.2d 141, 143-44 (N.D.1988); Hogue v. Bourgois, 71 N.W.2d 47, 52 (N.D.1955).
 
 
 13
 The land acquired by plaintiffs or their predecessors in interest through United States patent was adjacent to the ordinary high water mark[4] of West Bay at the time of the original survey, and hence was also subject to reliction and submergence.[5] Under the doctrine of reliction, the upland landowner takes title to lands uncovered by the gradual recession of the water. See Bear v. United States, 611 F.Supp. 589, 593 n. 2 (D.Neb.1985), aff'd, 810 F.2d 153 (8th Cir.1987). Under the doctrine of submergence, title to land which becomes submerged by the gradual rise in water level reverts to the sovereign "in order to guarantee full public enjoyment of the watercourse." Bonelli Cattle, 414 U.S. at 323, 94 S.Ct. at 525; Hogue, 71 N.W.2d at 52.
 
 
 14
 Were the rule otherwise, the dominion and control of navigation by the state ... would depend on the vagaries of the [water level], permitting state control where the [water] adhered to its course at the time of admission of the State to the Union and denying the state control where the [water] ... subsequently migrated and submerged patented lands. This would lead to absurd and whimsical results.
 
 
 15
 Hogue, 71 N.W.2d at 52.
 
 II.
 
 16
 The water level of Devils Lake has fluctuated widely since North Dakota obtained title to the lakebed.[6] The lake had begun to recede in 1867, and when the shoreline's elevation fell below 1,423 feet above sea level in 1909, West Bay became entirely dry. The exposed land was cultivated as farmland. In 1940, Devils Lake reached a low of 1,400 feet above sea level, and gradually began to rise again. Farming continued on land that was once West Bay until the lake level again rose above 1,423 feet above sea level in 1974. The ordinary high water mark is now at 1,427 feet above sea level, and West Bay remains submerged.
 
 
 17
 In 1929, the owners of land surrounding what had once been West Bay apportioned the dry lakebed among themselves and commenced an action to quiet title to the land they apportioned. North Dakota was served as a party defendant, but did not enter an appearance, and a default judgment was granted against the state. In 1949, plaintiff received a quitclaim deed from the state to other relicted lands as a result of an apportionment between plaintiff and the state, which in addition to owning the lakebed also owned upland adjacent to plaintiff's land.
 
 
 18
 In 1971, as part of the Garrison Diversion water project, the state conveyed to the United States by quitclaim deed all land "lying below the meander line in the Devils Lake-Stump Lake chain of lakes," in other words, its interest in the lakebed.[7] When the water level rose to again submerge the land which was subject to the 1929 judgment and the 1949 quitclaim deed, plaintiff brought this quiet title action, arguing the state's deed to the United States created a cloud on its title.
 
 III.
 
 19
 Plaintiff concedes and the North Dakota Supreme Court has specifically held that for virtually all other property owners on Devils Lake, the ordinary high water mark constitutes the boundary between the land owned by private interests and the lakebed owned by the sovereign. See In re Ownership of Bed of Devils Lake, 423 N.W.2d 141, 145 (N.D.1988).[8] Plaintiff argues, however, that its 1929 judgment and 1949 quitclaim deed override the common law of reliction and submergence, because the effect of the judgment and the deed was to convey to plaintiff the state's right to the land not only when it was relicted but also when it again became submerged lakebed. Plaintiff contends the judgment and the deed effectively give it, as a private party, the right to own a section of navigable waterbed.
 
 
 20
 We agree with the United States and the State of North Dakota that plaintiff's position is directly contrary to the public trust principles upon which the doctrines of navigability, submergence, and reliction are based. Ownership of the bed of navigable streams and lakes is vested in the state because "[s]uch waters ... are incapable of ordinary and private occupation." Bonelli Cattle, 414 U.S. at 322, 94 S.Ct. at 524 (emphasis supplied). While no one has argued that the public's interest in use of the waters is defeated by the state's conveyance of the lakebed to the United States, private ownership of a portion of the lakebed is antithetical to such use. Id. Cf. Roberts, 181 N.W. at 625.[9]
 
 
 21
 Moreover, plaintiff's position that the judgment and the quitclaim deed conveyed a sliver of the state's submergence rights imposes an artificial designation of "public" and "private" zones on a navigable waterway which the law does not permit. "[T]he law governing riparian rights has no regard for artificial boundary lines." Oberly v. Carpenter, 67 N.D. 495, 274 N.W. 509, 513 (1936). "Where a water line is the boundary of a given lot, that line, no matter how it shifts, remains the boundary." Jefferis v. East Omaha Land Co., 134 U.S. 178, 196, 10 S.Ct. 518, 523, 33 L.Ed. 872 (1890); Oberly, 274 N.W. at 513.
 
 
 22
 Accordingly, although plaintiff indisputably received title to certain relicted lands through the 1929 judgment and the 1949 quitclaim deed, we find plaintiff in each instance received only such rights as it was entitled to have as a riparian owner upon public waters. See Roberts, 181 N.W. at 626. To the extent the water level of Devils Lake continues to fluctuate, plaintiff will be entitled to any relicted lands, just as in the past it has benefited from substantial reliction. But as for lands which are or will become submerged, neither the 1929 judgment nor the 1949 quitclaim deed are effective to defeat the public's interest in West Bay as a navigable waterway.
 
 
 23
 For all of the foregoing reasons, the district court's judgment subjecting plaintiff's land to the doctrine of submergence, as well as the doctrine of reliction, is in all respects affirmed.
 
 
 
 *
 The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota
 
 
 [2]
 The Honorable Karen K. Klein, United States Magistrate for the District of North Dakota
 
 
 [3]
 The magistrate concluded that state law rather than federal law governed resolution of plaintiff's quiet title action. See generally California ex rel. State Lands Commission v. United States, 457 U.S. 273, 281-83, 102 S.Ct. 2432, 2437-38, 73 L.Ed.2d 1 (1982); Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co., 429 U.S. 363, 377-78, 97 S.Ct. 582, 590-91, 50 L.Ed.2d 550 (1977). We agree with the United States that the result under either federal law or state law is the same, and hence we need not address the United States' claim that federal law should control. Cf. California ex rel. State Lands Commission, 457 U.S. at 283, 102 S.Ct. at 2438 (choice-of-law issue clearly drawn where state and federal law differed)
 
 
 [4]
 The ordinary high water mark is "that line reached by water when lake or stream is ordinarily full and the water ordinarily high." N.D.Cent.Code Sec. 61-15-01. It defines the limit of a water body by reference to the water's effect on vegetation. A boundary of a lakebed, as measured by the ordinary high water mark, is "the bed which the water occupies sufficiently long and continuously to wrest it from vegetation." In re Ownership of the Bed of Devils Lake, 423 N.W.2d 141, 144-45 (N.D.1988)
 
 
 [5]
 Lands such as plaintiff's which border on a lake or ocean are called littoral lands. Riparian lands border rivers or streams. The principles applicable to riparian and littoral lands are the same. See Alexander Hamilton Life Insurance Co. v. Virgin Islands, 757 F.2d 534, 538 & n. 5 (3d Cir.1985); Roberts v. Taylor, 47 N.D. 146, 181 N.W. 622, 625 (1921) ("in this state a lake is differentiated from a water course only in that it is simply an enlarged water course wherein the waters may flow or a basin wherein the waters are quiescent")
 
 
 [6]
 These fluctuations have all been due to natural causes. As a terminal lake, Devils Lake is affected by a combination of hydrological processes. Water is supplied by inflowing streams, precipitation, overland runoff, and inflowing groundwater seepage. Water is lost through evaporation and outflowing groundwater seepage
 
 
 [7]
 When Congress reauthorized the Garrison Diversion project in 1965, it mandated that nonfederal interests (i.e., the state of North Dakota and the Garrison Dam Conversion District) contribute substantially to the waterfowl and wildlife habitat aspects of the project. See Garrison Diversion Unit, Missouri River Basin, P.L. No. 89-108 Sec. 2, 79 Stat. 433 (1965), reprinted in 1965 U.S.Code Cong. & Admin.News 475, 476-77. Eventually, the state and the federal government agreed the lakebed of the Devils Lake-Stump Lake chain of lakes would be conveyed to the federal government in lieu of a cash payment. See id. Sec. 2(d), reprinted in 1965 U.S.Code Cong. & Admin.News at 475, 476
 In a separate action, the state has obtained a judgment requiring the Secretary of the Interior to give enhancement credit for the West Bay lakebed except to the extent a court rules (1) that title to the lakebed resides in the Devils Lake Sioux Tribe or (2) that title otherwise did not reside in the state at the time of conveyance in 1971. The district court denied the Devils Lake Sioux Tribe's motion to intervene in this case, and the rights of the Tribe are not currently before us.
 
 
 [8]
 The court in Bed of Devils Lake certified a class of "[a]ll landowners above, but adjacent to, the meander line around Devils Lake and all landowners who claim an interest in the lakebed below the meander line," except for the United States, the Devils Lake Sioux Tribe, the plaintiffs in the instant case, the State of North Dakota, and the Garrison Diversion Conservancy District, all of whom had claims pending in other forums
 
 
 [9]
 In contrast to the conveyance of relicted land by the state to plaintiff in 1949, the 1971 deed to the United States expressly conveyed the lakebed by reference to pools