2015 ND 232

Rocky NORBY, Plaintiff, Appellant
and Cross–Appellee

v.

ESTATE OF Doris W. KUYKENDALL,
James R. Kuykendall individually and
as guardian and conservator for Doris
W. Kuykendall, Todd Hermanson, and
Terry Sivertson, Defendants, Appellees
and Cross–Appellants.

No. 20140380.

Supreme Court of North Dakota.

Sept. 17, 2015.

Ariston E. Johnson, Watford City, N.D., for plaintiff, appellant and cross-appellee.

Kevin J. Chapman, Williston, N.D., for defendants, appellees and cross-appellants.

KAPSNER, Justice.

[¶ 1] Rocky Norby appeals, and the Estate of Kuykendall and others (collectively "Kuykendalls") cross-appeal, from a judgment quieting title to certain McKenzie County property in James Kuykendall and dismissing Norby's action to eject Kuykendall from the disputed property. Because Norby cannot claim title to accretions beyond the fixed boundary line set forth in his deed, we affirm the judgment.

I

[¶ 2] In 1912, Nels Olsen Walla received a patent from the United States for land in McKenzie County that abuts the Montana–North Dakota border. The Yellowstone River flows through the area, but the patent does not recite the river as a boundary of the property. In 1971, James Kuykendall purchased the land from his parents through a contract for deed. The deed does not describe the river as the boundary line of the property, but deeds in the chain of title state the conveyance was "less parts eroded [by or into] the Yellowstone River." James Kuykendall received a warranty deed to the property in 1994, stating the grant was "[s]ubject to exceptions, reservations, easements and rights of way of record."

[¶ 3] In 1984, Richard and Rocky Norby purchased a section of Richland County, Montana, property contiguous to the Kuykendall's property in North Dakota. The deed from which the Norbys received ownership of the property does not describe the Yellowstone River as the boundary line of the property and grants them property located only in Montana.

[¶ 4] From its formation to the present, the Yellowstone River has moved slowly east, eroding land from its east bank and accreting land to its west bank. At some point, a portion of the river crossed over from Montana into North Dakota and onto the land now owned by the Kuykendalls. This migration has left approximately 96 acres of accreted land between the North Dakota–Montana border and the west bank of the Yellowstone River. The Kuykendalls have paid the real estate taxes on the accreted land. In 2005, the Norbys executed a quit claim deed conveying the accreted land in North Dakota to Rocky Norby.

[¶ 5] Norby brought this action in 2012 to eject the Kuykendalls from the 96 acres of land between the North Dakota–Montana border and the west bank of the Yellowstone River and to have title to the disputed property quieted in him. Norby alleged he owned the land through the doctrine of riparian accretions. The Kuykendalls answered, claiming Norby does not own any land located in North Dakota and asserting the action was barred by the statute of limitations and laches. On cross-motions for summary judgment, the

district court dismissed the action and quieted title in the Kuykendalls, concluding "Norby does not have title to property in North Dakota, Norby cannot claim title to property by accretion in North Dakota, and the true owner of the North Dakota Property is the Kuykendalls." The court did not address the Kuykendalls' alternative defenses of the statute of limitations and laches.

## II

[¶ 6] Norby argues the district court erred in quieting title to the 96 acres of land in the Kuykendalls because, as a matter of law, he is entitled to the disputed property under the law of riparian accretions.

 [¶ 7] The standard for reviewing summary judgments is well established:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court

properly granted summary judgment is a question of law which we review de novo on the entire record.

*Hamilton v. Woll*, 2012 ND 238, ¶ 9, 823 N.W.2d 754 (quoting *Wenco v. EOG Res., Inc.*, 2012 ND 219, ¶ 8, 822 N.W.2d 701).

[¶ 8] Unlike the Red River, which forms the boundary between North Dakota and Minnesota, the boundary between North Dakota and Montana is fixed at "the twenty-seventh meridian of longitude west from Washington." N.D. Const. art. XI, § 1. The law on riparian accretions is found in N.D.C.C. § 47–06–05, which provides:

> Where from natural causes land forms by imperceptible degrees upon the bank of a river or stream, navigable or not navigable, either by accumulation of material or by the recession of the stream, such land belongs to the owner of the bank, subject to any existing right of way over the bank.

Subject to exceptions not pertinent here, "[t]his statute 'is essentially a restatement of the well-established common law rule governing riparian rights.' " *J.P. Furlong Enters., Inc. v. Sun Expl. and Prod. Co.*, 423 N.W.2d 130, 133 (N.D.1988) (quoting *Hogue v. Bourgois*, 71 N.W.2d 47, 53 (N.D. 1955)). The common law doctrines of "[a]ccretion, dereliction (or reliction), erosion and avulsion" apply "[w]here title to real property describes a boundary line as a body of water." 9 Richard R. Powell, *Powell on Real Property* § 66.01[1] (2015). *See also State ex rel. Sprynczynatyk v. Mills*, 1999 ND 75, ¶ 5, 592 N.W.2d 591 (" 'Where a water line is the boundary line of a given lot, that line, no matter how it shifts, remains the boundary.' " (internal citation omitted)).

██ [¶ 9] Accordingly, it appears well settled that " 'when the boundary is fixed by the deed at a specified line without

reference to the water, the grantee cannot claim accretions beyond such line." *Maunalua Bay Beach Ohana 28 v. State*, 122 Hawai'i 34, 222 P.3d 441, 444 (App.2009) (quoting 4 Herbert Thorndike Tiffany, *The Law of Real Property* § 1220, at 1075 (3rd ed.1975)). *See also Van Deventer v. Lott*, 180 F. 378, 382 (2nd Cir.1910) ("[I]t has never been held that the owner of property, a portion of which has been washed away by the sea, has title to land which has formed over a half a mile distant on the other side of a wide, navigable channel at a place to which his title never extended."); *Greenfield v. Powell*, 218 Ala. 397, 118 So. 556, 558 (1928) ("Lands on one side of a stream within a given subdivision cannot by accretion ever pass the outside boundary limited in the deed."); *Perry v. Sadler*, 76 Ark. 43, 88 S.W. 832, 833 (1905) ("This tract was not described by name or number ... thereby carrying the boundary to the shifting water line, but this boundary was fixed, and the acreage determined by the contract and deed."); *State v. Esselman*, 179 S.W.2d 749, 751 (Mo.Ct.App.1944) ("It thus appears that to give the owner of a tract of land the right to accretions, the river or stream—not courses and distances, metes and monuments—must be made the boundary. The one is a changing boundary, the other is a fixed boundary which limits the field."); *Archer v. S. Ry. Co.*, 114 Miss. 403, 75 So. 251, 252 (1917) ("However such accretions may be commenced or continued, the right of one owner of uplands to follow and appropriate them ceases when the formation passes laterally the line of his coterminous neighbor." (internal citation omitted)); *Ludington v. Marsden*, 181 A.D.2d 176, 586 N.Y.S.2d 165, 169 (1992) ("A riparian owner properly claims the accreted land formed contiguous to his shoreline, but may not 'claim beyond the point where such accessions began to be made adjacent to the property of adjoining owners.'" (in-

ternal citation omitted)); *State v. Johnson*, 278 N.C. 126, 179 S.E.2d 371, 385 (1971) ("[A]ccretion and erosion do not change boundaries unless the body of water is a boundary line."); *Bonnett v. State*, 151 Or. App. 143, 949 P.2d 735, 740 (1997) ("[A] fixed boundary does not become subject to riparian rules simply because new land has developed as a result of riparian processes."); *Horry Cty. v. Woodward*, 282 S.C. 366, 318 S.E.2d 584, 589 (App.1984) (North Carolina landowner could claim accretions only up to the fixed boundary of the North Carolina–South Carolina line); *Allard v. Curran*, 41 S.D. 73, 168 N.W. 761, 762 (1918) (where boundary line between lands of appellant and respondent was a government section line, there was "no reason, in justice or equity, why the land involved ... should be given to respondent merely because the river had at some time touched her land."); Annot., *Right to follow accretions across division line previously submerged by action of water*, 8 A.L.R. 640, 643 (1920) ("[W]here the stream or water's edge was not the boundary, the doctrine that the owner of land to which accretions formed may follow them across the former boundary line and over the place formerly occupied by land of another has not been applied."). Norby cites no caselaw to support the proposition that he is entitled to accretions beyond the fixed legal boundary of his property, and we have found none.

[¶ 10] Common sense supports this rule. We have recognized "[r]iparian landowners are by necessity subject to losses and gains caused by the water; under well-established principles of law a riparian landowner 'is without remedy for his loss in this way [and] cannot be held accountable for his gain.'" *North Shore, Inc. v. Wakefield*, 542 N.W.2d 725, 729 (N.D. 1996) (quoting *United States v. 11,993.32 Acres of Land*, 116 F.Supp. 671, 675

(D.N.D.1953)). *See also J.P. Furlong*, 423 N.W.2d at 133 (" '[T]he general rule rests upon the equitable idea that a riparian owner should have the opportunity to gain by accretion since he is subject to the hazard of loss by erosion.' " (internal citation omitted)). The equitable basis of the rule on riparian accretions would crumble if it were applied to situations where property is conveyed with fixed boundaries not defined by a body of water. In *Horry County*, the court explained the inequities that would ensue if the North Carolina landowner were allowed to follow accretions beyond the fixed boundary of his North Carolina property into South Carolina:

In this case, [the North Carolina landowner] and his predecessors in title lost no land beyond the South Carolina line by the action of contiguous waters. They have never held title of record to Bird Island in South Carolina. If [the North Carolina landowner] were permitted to follow accretions across the original boundary of his property, he would receive a windfall unrelated to any risk of loss imposed on him by the law. Conversely, [the original South Carolina landowner] and his successors in title, having suffered the loss of their land by erosion (a risk imposed on them by law as well as nature), would be deprived of the reciprocal benefit of accretion which the law normally grants to a riparian owner. Such a result is against reason and equity.

318 S.E.2d at 589. *See also Bonnett*, 949 P.2d at 740 (limiting ownership of accretions to within fixed property lines "fit[s] the 'general principles of convenience, justice, and common rights of property.' " (quoting *Archer*, 75 So. at 252)). This rule also comports with our caselaw applying N.D.C.C. § 47–06–05 and its predecessor statutes, because each case appears to have involved property that was bordered

in deeds by a body of water. *See North Shore, Inc. v. Wakefield*, 530 N.W.2d 297, 299 (N.D.1995); *Kim–Go v. J.P. Furlong Enters., Inc.*, 460 N.W.2d 694, 697 (N.D. 1990); *J.P. Furlong*, 423 N.W.2d at 131; *Greeman v. Smith*, 138 N.W.2d 433, 435 (N.D.1965); *Perry v. Erling*, 132 N.W.2d 889, 890 (N.D.1965); *Jennings v. Shipp*, 115 N.W.2d 12, 13 (N.D.1962); *Hogue*, 71 N.W.2d at 50; *Oberly v. Carpenter*, 67 N.D. 495, 500, 274 N.W. 509, 512 (1937); *Gardner v. Green*, 67 N.D. 268, 269, 271 N.W. 775, 776 (1937).

[¶ 11] The court in *Horry County* relied on this Court's application of the reemergence doctrine in *Greeman*, 138 N.W.2d at 436, and *Perry*, 132 N.W.2d at 897, to support its decision. 318 S.E.2d at 587. *Perry* was a three to one decision, authored by Justice Erickstad. 132 N.W.2d at 890. Justice Teigen, joined by Justice Strutz, concurred specially to provide "a little further explanation of the reasons" for the decision. *Id.* at 899 (Teigen, J., concurring specially). Justice Teigen explained:

It would be incongruous to reason that the territorial legislature enacted the law on accretion on the premise that governmental subdivisions bounded by governmental survey lines on all four sides, whether owned by the United States or patented and privately owned, could be lost to the territory by the encroachment thereon by a navigable river.

. . . .

Thus it is clear to this writer that Section 47–06–05, N.D.C.C., which provides that where from natural causes land forms by imperceptible degrees upon the bank of a river or stream, either by accumulation of material or by the recession of the stream, such land belongs to the owner of the bank, was

enacted by way of indemnity to the fractional lot owner bordering upon a stream for losses which he might suffer by action of the stream; and that Section 47–06–06, N.D.C.C., provides the fractional lot owner an opportunity for indemnity in the event a portion of his land should be lost as a result of avulsion occurring where the land taken by the stream is identifiable. Where, however, subdivisions are bounded on all four sides by government subdivision lines and are remote lands, the statute, Section 47–06–05, supra, is not applicable.

*Id.* at 901–902. Although Justice Burke dissented because N.D.C.C. § 47–06–05 "contains no words of limitation, restriction or qualification," *Perry*, 132 N.W.2d at 903 (Burke, J. dissenting), he joined the other members of the Court in applying the reemergence doctrine in *Greeman*, 138 N.W.2d at 436. The *Perry* and *Greeman* decisions represent the current state of the law in North Dakota and comport with the general rule. Courts in Oklahoma, which has enacted an accretion statute identical to N.D.C.C. § 47–06–05, *see* Okla. Stat. Ann. tit. 60, § 335 (West 2010), have also adopted the reemergence doctrine. *See Mikel v. Kerr*, 499 F.2d 1178, 1180–1181 (10th Cir.1974) (applying Oklahoma law) ("Oklahoma has chosen not to apply its accretion statute to factual situations like the one before us."); *see also Ford v. Harris*, 383 P.2d 21, 23 (Okla.1963); *Mapes v. Neustadt*, 197 Okla. 585, 173 P.2d 442, 443–444 (1946).

[¶ 12] Norby relies on language in the deeds in the Kuykendalls' chain of title stating the conveyance was "less parts eroded [by or into] the Yellowstone River" to support his claim of title to accretions beyond his property line into North Dakota. We reject this argument for two reasons. First, " '[i]n an action to quiet title

to realty, the plaintiff must rely upon the strength of his own title and not upon the weakness of that of his adversary.' " *Finstad v. Gord*, 2014 ND 72, ¶ 24, 844 N.W.2d 913 (quoting *Woodland v. Woodland*, 147 N.W.2d 590, 602 (N.D.1966)). *See also Hogue*, 71 N.W.2d at 53. Norby's 1984 deed did not include the conveyance of any land located in North Dakota. Second, the deeds in the chain of title refer to "erosion" rather than "accretion." In *J.P. Furlong*, 423 N.W.2d at 133 n. 4, we defined the terms "accretion" and "erosion":

"Accretion" refers to the gradual deposit and addition of soil along the bank of a waterbody caused by the gradual shift of the waterbody away from the accreting bank.

"Erosion" refers to the gradual loss of soil along the bank of a waterbody caused by the gradual encroachment of water into the eroding bank.

(Internal citation omitted). The terms are the converse of each other. Excepting land eroding into the river from the grant of property in the Kuykendalls' deeds did not amount to a conveyance of accretions located in North Dakota to Norby.

[¶ 13] Norby argues quieting title to the disputed property in the Kuykendalls violates the rule "that the law governing riparian rights has no regard for artificial boundary lines, whether between sections or their subdivisions, or between counties, states, or nations." *Oberly*, 67 N.D. at 503, 274 N.W. at 513. *See also 101 Ranch v. United States*, 905 F.2d 180, 185 (8th Cir.1990); *United States v. 2,134.46 Acres of Land*, 257 F.Supp. 723, 727 (D.N.D.1966); *Perry*, 132 N.W.2d at 895; *Jennings*, 115 N.W.2d at 14; *Hogue*, 71 N.W.2d at 53. However, this statement is merely a corollary to the rule that " '[w]here a water line is the boundary line of a given lot, that line, no matter how it shifts, remains the boundary.' " *Sprynczy-*

*natyk,* 1999 ND 75, ¶ 5, 592 N.W.2d 591 (internal citation omitted). *See 101 Ranch,* at 185. This statement of the law is true when a water line is the boundary of the land described, as it was in each of the cases cited for the proposition. But when the boundary line is fixed without reference to a body of water, as it is in this case, the rule does not apply.

[¶ 14] We conclude the district court did not err in ruling as a matter of law that Norby cannot claim title to accretions beyond the fixed boundary line set forth in his deed.

### III

[¶ 15] It is unnecessary to address issues raised in the cross-appeal and other arguments presented because they either are unnecessary to the decision or are without merit. We affirm the judgment.

[¶ 16] LISA FAIR McEVERS, and DANIEL J. CROTHERS, JJ., concur.

SANDSTROM, Justice, concurring in the result.

[¶ 17] North Dakota statute N.D.C.C. § 47–06–05 plainly says:

> Where from natural causes land forms by imperceptible degrees upon the bank of a river or stream, navigable or not navigable, either by accumulation of material or by the recession of the stream, such land belongs to the owner of the bank, subject to any existing right of way over the bank.

The majority opinion essentially says the statute is similar to the common law so we will analyze the case as if there were no statute. But in North Dakota there is no common law where the law is declared by statute. N.D.C.C. § 1–01–06 ("In this state there is no common law in any case in which the law is declared by the code.").

[¶ 18] If there were no North Dakota statute, the lengthy but irrelevant citations in ¶ 9 to cases from other jurisdictions might sound compelling, but on review, the cases themselves turn out not to be. Even the case *Maunalua Bay Beach Ohana 28 v. State,* 122 Hawai'i 34, 222 P.3d 441, 444 (App.2009), cited for the lead-off proposition about what "appears well settled," is not the holding and is included in a survey of law with introductory language about what "[s]ome scholars have expressed."

[¶ 19] This Court's opinions, *Perry v. Erling,* 132 N.W.2d 889, 902 (N.D.1965), and *Greeman v. Smith,* 138 N.W.2d 433 (N.D.1965), however, appear to have resolved the question here with the answer arrived at by the majority, limiting the statute's application to property borders defined by the body of water. Although this interpretation adds words not in the statute, the opinions have stood for half a century without judicial or legislative correction. That being the case, I believe the doctrines of stare decisis and legislative acquiescence apply, and the interpretation persists.

[¶ 20] I concur in the result.

[¶ 21] GERALD W. VANDE WALLE, C.J., concurs.